UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH BRENT GREGORY,

    Petitioner,

    v.

G. LEWIS, Warden,

    Respondent.
_____/

No. C-12-0967 EMC (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Joseph Brent Gregory filed this *pro se* action seeking a writ of habeas corpus under 28 U.S.C. § 2254. He claims that his constitutional right to be free of ex post facto laws was violated when prison officials applied to him a statute that had been amended as of January 25, 2010 to decrease the time credits he would earn in prison. The matter is now before the Court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition is **DENIED**.

## II. BACKGROUND

A.    Gregory's Criminal And Prison History

Gregory is serving a four-year prison sentence on a second degree robbery conviction. He committed the robbery and was convicted in 2008. He was sentenced in February 2009. *See* Resp. Ex. 1.

During an earlier incarceration in the California prison system, Gregory had been validated in 1998 as a member of the Nazi Low Riders prison gang. *See* Resp. Ex. 2. He was re-validated as an active Nazi Low Rider member in July 2009. *See* Resp. Ex. 3. In November 2009, Gregory was

1  endorsed for an indeterminate security housing unit ("SHU") term due to his gang validation. He
2  was transferred to Pelican Bay and placed in the SHU.

3    Gregory participated in the debriefing process in 2010. Eventually, he was deemed a
4  debriefing program failure after, among other things, prison officials discovered he had made threats
5  of physical harm toward other inmates within the program. *See* Resp. Ex. 7. He was removed from
6  the debriefing program and retained in the SHU on indeterminate status in or about January 2012.
7  He later informed the institutional classification committee that he wanted to be placed back into the
8  debriefing program in March 2012. *See* Resp. Ex. 8.

9    Under state regulations and rules of the California Department of Corrections &
10 Rehabilitation ("CDCR"), several things must occur for a prisoner to complete the debriefing
11 process and be deemed a prison gang dropout. The prisoner must complete an integrated yard or
12 transitional housing unit program. Upon completion of the program, a validation package requesting
13 dropout status must be submitted and accepted by CDCR staff. *See* Cal. Code Regs. tit. 15,
14 § 3378(c)(1) & (5), § 3378.1.

15   An inmate also may be eligible to be reviewed for inactive gang status after six years of non-
16 involvement in gang activity. *See id.* at § 3378(e).

17   The parties disagree as to whether Gregory is still active in a gang. There is no evidence that
18 he has completed the debriefing process, has been validated as a dropout or has been deemed
19 inactive in the gang. Under the regulations, he still qualifies as a gang member.

20 B.  The Change In The Law

21   California Penal Code § 2933.6 was amended effective January 25, 2010 to make certain
22 prison gang members and associates ineligible for some time credits. "Notwithstanding any other
23 law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral
24 Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision
25 (b) *or upon validation as a prison gang member or associate* is ineligible to earn credits pursuant to
26 Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric
27 Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that
28

misconduct." Cal. Penal Code § 2933.6 (as amended effective Jan. 25, 2010) (emphasis added). The 2010 amendment added the italicized phrase to § 2933.6.

Before the 2010 amendment, "it was apparently possible for validated prison gang members placed in an [administrative segregation unit] to earn conduct credits totaling one-third of their sentences." *In re Efstathiou*, 200 Cal. App. 4th 725, 728. (Cal. Ct. App. 2011). After the amendment, a validated gang member in administrative segregation could not earn such conduct credits.

C. <u>Gregory's Habeas Petitions</u>

Gregory filed unsuccessful petitions for writ of habeas corpus in the state courts asserting his Ex Post Facto Clause challenge to § 2933.6 as applied to him. The Del Norte County Superior Court rejected his petition in a short, but reasoned, decision. *See* Resp. Ex. 10. The Del Norte County Superior Court cited *In re Sampson*, 197 Cal. App. 4th 1234 (Cal. Ct. App. 2011), which held that the amendment to § 2933.6 denying conduct credits to validated gang members housed in the SHU applied prospectively only and therefore did not violate the prohibition against ex post facto laws. The California Court of Appeal rejected Gregory's petition in a one-sentence denial with a citation to *Sampson*. *See* Resp. Ex. 12. The California Supreme Court summarily denied Gregory's petition. *See* Resp. Ex. 14.

Gregory then filed a federal petition for writ of habeas corpus in which he contended that the application of California Penal Code § 2933.6, as amended effective January 25, 2010, violated his right to be free of ex post facto laws. He indicated that the application of the amended version of Section 2933.6 resulted in his expected release date being extended from March 20, 2012 until August 5, 2012. The Court issued an order to show cause why the petition should not be granted. Respondent filed an answer. Petitioner filed a traverse. The matter is ready for decision on the merits.

///
///
///
///

## III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the petition concerns the execution of a sentence for a prisoner incarcerated in Del Norte County, California, which is within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## IV. EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  *See* 28 U.S.C. § 2254(b), (c).

Respondent contends that state court remedies have been exhausted for only the first of Gregory's two claims.  Respondent reads the federal petition to allege claims that (1) § 2933.6 violates the Ex Post Facto Clause as applied to Gregory's sentence, and (2) § 2933.6's application to his sentence undermines the terms of his plea agreement.  Gregory's petition does argue that his plea agreement entitles him to good behavior credits, but the argument is not a separate claim for relief and instead is a further argument as to why there was an Ex Post Facto Clause violation.  That it is further argument in support of the first claim is evident from the way Gregory's argument about his plea agreement roughly tracks the language in one of the Supreme Court's ex post facto cases discussed later in this order.[1]  There is only one claim in the petition, and state judicial remedies were exhausted for it.

---

[1] Gregory argues in his petition: "Petitioners plea agreement for his prison sentence entitles him to good behavior credits.  Good behavior credits were a significant factor in his sentencing and plea agreement and a determinate in his decision for the plea agreement.  Once that determinate was taken punishment was increased violating ex post facto."  Docket # 1, p. 6 (errors in source).  This argument about the plea agreement tracks language in *Weaver v. Graham*, 450 U.S. 24 (1981), in which the Supreme Court rejected an argument by the State that the good conduct law was not part of the original sentence or punishment attached to the crime for Weaver.  "[W]e need not determine whether the prospect of the gain time was in some technical sense part of the sentence to conclude that it in fact is one determinant of petitioner's prison term – and that his effective sentence is altered once this determinant is changed . . . We have previously recognized that a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed."  *Id.* at 32.

4

## V. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 is the proper jurisdictional basis for a habeas petition attacking the execution of the sentence by a petitioner in custody pursuant to the judgment of a State court. *See White v. Lambert*, 370 F.3d 1002, 1004 (9th Cir. 2004), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546, 554 (9th Cir. 2010).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

5

## VI. DISCUSSION

The parties appear to agree that, due to the amendment of § 2933.6, Gregory has earned fewer time credits after January 25, 2010 than he would have earned under the former law. Gregory contends that applying the amended § 2933.6 to him violates the Ex Post Facto Clause because the 2010 amendment increased the punishment for his 2008 crime. Respondent contends that the amended § 2933.6 does not increase the punishment for Gregory's 2008 crime and instead penalizes his prison misconduct (*i.e.*, active membership in a prison gang) occurring after January 25, 2010, and therefore is not an impermissible ex post facto law.

### A. The Constitutional Provision And Its Application By The Supreme Court

Article I, section 10 of the United States Constitution prohibits the States from passing any ex post facto law. "To fall within the *ex post facto* prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' . . . by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted). The general rule appears at first blush to be quite straightforward, but its application is more complex when one attempts to determine the date to be used for retrospectivity purposes and to determine the "punishment" to which the rule applies. Several Supreme Court cases must be considered to understand the Court's approach to determining retrospectivity as well as the punishment being affected.

In *Lindsey v. Washington*, 301 U.S. 397 (1937), the Court found an Ex Post Facto Clause violation in the application of an amended sentencing statute to a petitioner who committed his crime before its amendment where the amended statute made mandatory that which had been only the maximum sentence under the old statute. *Id.* at 400. Although the prisoner could have been given the same 15-year sentence under both the old and amended statutes, applying the amended statute to him violated the Ex Post Facto Clause. *Id.* at 401. "It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the fifteen-year term." *Id.* at 401-02.

Several decades after *Lindsey*, the Supreme Court summarily affirmed a lower court's finding of an Ex Post Facto Clause violation where the State had amended a statute to forbid a prisoner from earning good conduct deductions for the first six months after his reincarceration following a parole violation. *See Greenfield v. Scafati*, 277 F. Supp. 644 (D. Mass. 1967), *summarily aff'd*, *Scafati v. Greenfield*, 390 U.S. 713 (1968).[2] The lower court held the amendment unconstitutional when applied to an inmate who committed his crime before the law's amendment. At the time the prisoner originally was sentenced, "he was entitled to earn 'good-conduct' deductions from the sentence imposed throughout the period of his incarceration." *Id.* at 644. The state's practice was to identify a tentative date of release by computing at the outset of a prisoner's sentence the total good conduct credits the prisoner could earn. *Id.* If the prisoner misbehaved and failed to earn any of the time credits already deducted, they were forfeited by an appropriate extension of the tentative date of release, although no forfeiture was provided for violating parole. *Id.* at 644-45. The statute later was amended in 1965 to provide that an inmate who was released on parole and violated parole would not be allowed to earn good-conduct deductions for the first six months after he was returned to prison. *Id.* The amendment did not apply to persons then on parole, but did apply to persons who were still in prison. Although Greenfield had been sentenced before the amendment took effect, he was paroled, and then violated parole after the amendment. *Id.* Upon his return to prison on the parole violation, he was subjected to the amended statute. The district court held the amended statute could not be applied constitutionally to persons such as Greenfield. *See id.* at 646. The Supreme Court summarily affirmed.

The Supreme Court next considered an ex post facto claim regarding time credits in *Weaver v. Graham*, 450 U.S. 24 (1981). In *Weaver*, Florida changed the formula for calculating good time credits, reducing the credits available for good conduct. The Court emphasized that the appropriate

---

[2] Although *Greenfield* is a summary affirmance, it is a judgment on the merits. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975). Summary affirmances "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions," *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam); *see also Edelman v. Jordan*, 415 U.S. 651, 671 (1974) (summary affirmances are of less precedential value than opinions treating the question on the merits). The Supreme Court later cited the *Greenfield* summary affirmance with approval in *Weaver*, 450 U.S. at 32, 34.

7

1  focus was on whether the new statute objectively "lengthen[ed] the period that someone in
2  petitioner's position must spend in prison." *Id.* at 33. According to the Court, "an inmate who
3  performs satisfactory work and avoids disciplinary violations could obtain more gain time per month
4  under the repealed provision, § 944.27(1) (1975) than he could for the same conduct under the new
5  provision, § 944.275(1) (1979)." Thus, "[f]or prisoners who committed crimes before its enactment,
6  § 944.275(1) substantially alters the consequences attached to a crime already completed, and
7  therefore changes 'the quantum of punishment,'" decreasing the rate at which good time credits
8  could be earned, and effectively increasing the punishment for crimes committed before its
9  enactment. *Weaver*, 450 U.S. at 33. As a result, the new law ran "afoul of the prohibition" against
10 ex post facto laws. *Id.* at 36.

11 In *Lynce v. Mathis*, 519 U.S. 433 (1997), the Supreme Court articulated the test as requiring
12 that the law "must be retrospective – that is, 'it must apply to events occurring before its enactment'
13 – and it 'must disadvantage the offender affected by it' . . . by altering the definition of criminal
14 conduct or increasing the punishment for the crime." *Id.* at 441.[3] The Supreme Court found an ex
15 post facto violation in a change in Florida law concerning provisional early release time credits
16 awarded to inmates to alleviate prison overcrowding. Lynce had been convicted of attempted
17 murder and sentenced to 22 years in prison at a time when Florida law provided for early release
18 credits to prisoners if prison populations exceeded certain pre-determined levels. Lynce was
19 released from prison in 1992 based in part on his accumulated 1,860 days of overcrowding credits.
20 Later that year, the Florida legislature enacted a statute canceling the overcrowding credits for
21 certain classes of inmates, including those who (like Lynce) had been convicted of attempted
22 murder. The Florida Attorney General opined that the statute should be applied retroactively, so
23 Lynce was arrested and sent back to prison to serve the sentence remaining without counting the
24 overcrowding credits. *Lynce* focused on whether the changed law increased the punishment, having

---

[3] Two years before *Lynce*, the Supreme Court explained that a change in the law that merely deprived a prisoner of an *opportunity* to obtain an earlier release did not violate the Ex Post Facto Clause where the possibility of increased punishment was speculative and attenuated. *California Dept. of Corrections v. Morales*, 514 U.S. 499, 510 (1995).

8

noted that the operation of the amended law "to effect the cancellation of overcrowding credits and the consequent reincarceration of petitioner was clearly retrospective." *Id.* at 441. The Court held that the new law violated the Ex Post Facto Clause. *See id.* at 441-47. The changed law did not merely remove an opportunity for early release, but instead "made ineligible for early release a class of prisoners who were previously eligible." *Id.* at 447.

B.  State Court's Rejection Of Gregory's Claim

In Gregory's case, the last reasoned decision is from the Del Norte County Superior Court. The decision states:

> The Petition is dismissed and the Order to Show Cause is discharged. Penal Code Section 2933.6 is not *ex post facto.* See *In re Sampson* (2011) 197 Cal. App. 4th 1234. There is also no merit to any claim that Section 2933.6 breaches contractual rights resulting from a plea bargain. Plea bargains do not entitle inmates to engage in prison misconduct, including gang activity.

Resp. Ex. 10.

*Sampson*, on which the Supreme Court relied, had rejected ex post facto challenge to § 2933.6 by another inmate who, like Gregory, had been sentenced and validated as a gang member before § 2933.6 was amended. *Sampson* explained that the Ex Post Facto Clauses of the federal and California constitutions were "analyzed identically." *Sampson*, 197 Cal. App. 4th at 1241. Assuming arguendo that the credit-eliminating amendment to § 2933.6 constituted punishment, the state appellate court in *Sampson* was "not convinced that it punishes the criminal conduct for which petitioner was imprisoned, or that it punishes misconduct that occurred prior to January 25, 2010." *Sampson*, 197 Cal. App. 4th at 1241.

> [I]f the credit eliminating amendment to section 2933.6 constitutes punishment, ex post facto principles do not bar its application to petitioner here, because it does not impose punishment for the offense that gave rise to petitioner's prison sentence. Rather, if it punishes, it punishes for conduct that occurred after the commission of, or the conviction for, the punishable offense. In other words, petitioner's ineligibility for conduct credit accrual is not punishment for the offense of which he was convicted. Nor is it punishment for gang-related conduct that occurred prior to January 25, 2010, since petitioner was not stripped of conduct credits he had already accrued. It is punishment for gang-related conduct that continued after January 25, 2010.

9

*Id.* at 1242. *Sampson* rejected petitioner's argument that he "'did nothing' after January 25, 2010 to bring himself within the ambit of the amended statute." *Id.* The court saw ongoing misconduct that could be punished based on its reasoning that prison gangs present a serious threat to the safety and security of California prisons; a regulation prohibits inmates from knowingly promoting, furthering or assisting any prison gang; the validation of a prison gang member is done with procedural protections; and the gang validation represents a determination that the inmate warrants an indeterminate SHU term as a severe threat to the safety of others or the security of the institution. *See id.* at 1242-43. The validated "inmate continues to engage in the misconduct that brings him or her within the amendment's ambit" unless and until prison officials release the validated inmate into the general population, or the inmate becomes eligible for inactive review, or the inmate debriefs. *See id.* at 1243.[4] In short, what was punished was in-prison conduct which occurred after the amendment, not the underlying crime and conviction.

C.  Analysis

Gregory is not entitled to habeas relief because the California court's rejection of his claim was not contrary to, or an unreasonable application of, clearly established Federal law as set forth by the Supreme Court. Specifically, the Court's holding that (1) used the date of in-prison misconduct rather than the date of the underlying criminal offense to determine whether the amended § 2933.6 was retrospective, and (2) determined that what was punished was not a past event but the ongoing misconduct of gang membership was not contrary to, or an unreasonable application of, Supreme Court holdings.

///

///

///

---

[4] *Sampson* also addressed the lower court's concern that the sheer length of time that it took to complete the debriefing process could result in the deprivation of credit earning opportunity for an inmate who was no longer engaged in the misconduct of gang affiliation. The state appellate court noted that there was no evidence that, if the petitioner completed debriefing, he would be denied all the credits he otherwise would have earned after January 25, 2010. 197 Cal. App. 4th at 1243-44. Thus, there was only the speculative and attenuated possibility of increasing the measure of punishment that did not implicate the Ex Post Facto Clause. *Id.* at 1243-44 (citing *Lynce* and *Morales*).

The Del Norte County Superior Court's approach and the *Sampson* decision on which the Superior Court relied[5] are not inconsistent with the Supreme Court's holdings in *Weaver* and *Lynce*. Unlike Gregory's situation, *Weaver* and *Lynce* did not involve punishment of any post-conviction misconduct. Instead, in both *Weaver* and *Lynce*, good time credits were unilaterally withdrawn or diminished as a result of a change in the rules, a diminution not triggered by any particular misconduct by the prisoner. The reduction in time credits available to those inmates who demonstrated good conduct effectively punished the original crime rather than any recent conduct of the prisoner. Neither *Weaver* nor *Lynce* precludes changes in law that punish prison misconduct occurring after the change in law. In this regard, § 2933.6 is not being applied retrospectively to Gregory since it penalizes ongoing prison misconduct of participation in gangs.[6]

The only Supreme Court decision that supports Gregory's challenge is *Greenfield v. Scafati*, 277 F. Supp. 644, *supra*, *summarily aff'd*, *Scafati v. Greenfield*, 390 U.S. 713. *Greenfield* could be read as holding the relevant date for retrospectivity purposes is the date of Gregory's criminal offense rather than the date of the misconduct that impacted the time credits since the district court

---

[5] An ex post facto challenge to § 2933.6 also was rejected by another California Court of Appeal in *In Re Efstathiou*, 200 Cal. App. 4th 725 (Cal. Ct. App. 2011)(using similar analysis to that in *Sampson*); *see also id.* at 729 (distinguishing Supreme Court's decision in *Weaver* by noting that the *Weaver* "inmate's credits were reduced through no fault of his own"). The two federal cases located that considered § 2933.6 used reasoning similar to that in the California cases to reject the Ex Post Facto Clause challenge to the amendment. *See Mares v. Stainer*, 2012 WL 345923 (E. D. Cal. 2012) (applying amended § 2933.6 to a prisoner who had been convicted and validated before the effective date of the amendment did not violate the Ex Post Facto Clause because the conduct being punished – active association with a gang – is continuing in nature and has continued after the amendment to § 2933.6); *Saavedra v. Cate*, 2012 WL 1978846 (E. D. Cal. 2012) (same).

[6] Prison gang affiliation is prohibited in California prisons and is, essentially, prison misconduct. *See* 15 Cal. Code Regs. § 3023(a) ("Inmates and parolees shall not knowingly promote, further or assist any gang as defined in section 3000"); *id.* at § 3000 ("gang" defined). Gang affiliation is viewed as ongoing misconduct by prison officials and state courts, *see In Re. Lopez*, 2011 WL 6329840, *7 (Cal. Ct. App. 2011) (unpublished decision). California courts reasonably could determine that a prospective prisoner could not expect the prohibited gang affiliation not to have any impact on the length of the prison term he ultimately will serve upon conviction. Gang affiliation thus would be like any of the other many forms of misconduct in prison that can affect the ultimate length of time the prisoner spends in prison. Even if the prisoner was validated as a gang member before § 2933.6 was amended, he did not lose any past credits earned but only lost the ability to earn credits after the amendment for his ongoing misconduct of being a gang member. The Del Norte County Superior Court reasonably could have determined that ongoing gang membership was just another form of misconduct that could result in a disciplinary, housing or classification decision that affected credit-earning eligibility without offending the Ex Post Facto Clause.

1  in *Greenfield* found an ex post facto violation even though a violation of parole which led to the
2  deprivation of credits occurred *after* passage of the new law. Unlike *Weaver* and *Lynce*, where good
3  time credits were unilaterally diminished despite the lack of any post-amendment misconduct, in
4  *Greenfield* the disadvantage was incurred as a result of post-amendment misconduct (the parole
5  revocation conduct). Yet the district court found an ex post facto violation.

6  However, a summary affirmance by the Supreme Court has a limited precedential value.
7  *Edelman v. Jordan*, 415 U.S. 651, 671 (1974). It only prevents a lower court from coming to the
8  opposite conclusion on the "precise issues presented and necessarily decided." *Mandel v. Bradley*,
9  432 U.S. 173, 176 (1977) (per curiam). The precise issue in *Greenfield* involved the
10 constitutionality of a change in law which effectively increased a sentence upon revocation of
11 parole. The district court focused particularly on the right to parole and the consequences of
12 denying or burdening that opportunity. *See Id.* at 646. The district court did not analyze the ex post
13 facto doctrine outside the context of parole revocation; it did not address the situation here where the
14 state has increased punishment (by denying good time credits) for ongoing prison conduct. While
15 the Supreme Court's summary affirmance in *Greenfield* could be read more broadly to support
16 Gregory's ex post facto claim, given its limited precedential value as a summary affirmance, this
17 Court cannot conclude that it must be read so broadly. To read *Greenfield* to effectively bar prisons
18 from enlarging the list of punishable prison misconduct or enhancing penalties therefor, even if
19 prospectively applied, would have sweeping consequences for prison administration; absent a clear
20 holding from the Supreme Court, this Court cannot find that such a holding is mandated by clearly
21 established federal law.

22 Finally, the Court notes several appellate courts have adopted views consistent with the
23 California court's analysis of the ex post facto claim herein. *See Ellis v. Norris*, 232 F.3d 619, 620-
24 21 (8th Cir. 2000) (state court's decision that repeal of statute that had allowed prison officials
25 discretion to award additional good time credits did not violate Ex Post Facto Clause was not
26 contrary to or an unreasonable application of clearly established federal law – prisoner received all
27 the accrued extra good time credits and only lost the ability to be awarded additional good time
28 credits); *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000) (rejecting ex post facto challenge to

administrative directive adopted ten years after petitioner was sentenced that disallowed good time credits for inmates classified as security risk group safety threat members, because no good time credit earned before the Directive was forfeited and petitioner was not so classified until after the Directive was in effect).[7] *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (varying views of lower courts on issue reflects lack of guidance by Supreme Court precedent).

D.  A Certificate Of Appealability Will Issue

Petitioner has "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists would find debatable the district court's assessment of petitioner's claim that the application of the amended version of California Penal Code § 2933.6 to him violated his rights under the Ex Post Facto Clause. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is **GRANTED** on the sole claim in the petition. Petitioner is cautioned that the Court's ruling on the certificate of appealability does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

### VII.  CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: June 20, 2012

EDWARD M. CHEN
United States District Judge

---

[7] The California Supreme Court took this approach in evaluating an earlier amendment to a time credit law in *In re Ramirez*, 39 Cal.3d 931, 936-37 (Cal. 1985) (amendments that modified manner in which inmates earned and forfeited sentence credits were not retrospective; "[t]here is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentence – the issue in *Weaver* – and an increase in sanctions for *future misbehavior* in prison – which is at issue here."); *but see id.* at 939 (Reynoso, J., dissenting) (the amendments are retrospective; "[t]he incorrectness of the majority's line of analysis is demonstrated by the contrary and correct analysis of *Greenfield v. Scafati*").

13